# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD G. CUNNINGHAM,

        Petitioner,                       No. Civ. A. 15-1054
                                        Chief Magistrate Judge Maureen P. Kelly

               v.

MIKE WENEROWICZ and KATHLEEN G.
KANE,

        Respondents.

## OPINION

**KELLY, Chief Magistrate Judge**

Richard Cunningham ("Petitioner") filed an Amended Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254, ECF No. 21, (the "Amended Petition") seeking to challenge his convictions for two counts of second degree murder, one count of burglary and one count of criminal conspiracy. The operative Petition is counseled. Id.

Petitioner was tried in a non-jury trial before the Honorable Lester Nauhaus of the Court of Common Pleas of Allegheny County. Petitioner was tried with three other co-defendants. In the course of a bench trial that occurred on different days, Petitioner's trial counsel fell ill after the close of testimony, but before closing arguments and unfortunately passed away. Judge Nauhaus appointed new counsel for Petitioner and granted a five-month extension of time for new counsel to present the closing argument for Petitioner.

In the Amended Petition, Petitioner asserts one ground for relief that he was denied the right to effective assistance of counsel when Judge Nauhaus ordered the trial attorney to be replaced by a substitute attorney prior to closing arguments. ECF No. 21 at 9. Petitioner alleges that this denial was in violation of the Sixth and Fourteenth Amendments. Id.

Upon review, the Court finds that Petitioner procedurally defaulted any Sixth Amendment claim because he did not raise a Sixth Amendment claim until his petition for reargument en banc with the Pennsylvania Superior Court in the direct appeal. As to the Fourteenth Amendment fundamental fairness claim, Petitioner fails to show that the State Courts' adjudication of this claim was contrary to or an unreasonable application of United States Supreme Court precedent or, alternatively, that he was denied fundamental fairness. Accordingly, the Amended Petition will be dismissed. Furthermore, because jurists of reason would not find the disposition of the Amended Petition debatable, a Certificate of Appealability will be denied.

## I. FACTS AND PROCEDURAL HISTORY

### A. Facts Underlying Petitioner's Conviction

The Pennsylvania Superior Court, in ruling on the direct appeal, summarized the facts of the case.

> On the evening of February 19, 2005, Kevilin Middleton hosted a birthday party for T.C. Lyerly. Toward the end of the party, Mr. Middleton made arrangements for exotic dancers to come to his residence and perform in exchange for two hundred dollars ($200). The exotic dancers, Angel Potter and Helen McCorkle, arrived at Mr. Middleton's residence along with Geneva Burrell. At this time, Mr. Middleton, Mr. Lyerly, and Chaoe Davis were the only people still at the party. Before the dancers' performance, however Mr. Middleton insulted Ms. Potter's appearance and refused to provide payment. Mr. Middleton, Ms. Potter, and Ms. Burrell began to argue. The argument escalated, and Ms. Potter reached into Mr. Middleton's pocket and removed money. Ms. Burrell advised Ms. Potter to return the money, and Ms. Potter eventually complied. Shortly thereafter, Ms. Potter and Ms. Burrell telephoned [Cunningham] and his co-defendants to come to Mr. Middleton's home and help secure payment.
>
> Approximately thirty (30) minutes later, a van arrived at Mr. Middleton's house. [Cunningham], Alfon Brown, Ramone Coto, and Eric Surratt exited the van and approached the residence. The men carried guns, and [Cunningham] wore a hooded sweatshirt and ski mask. Upon their arrival, at least three (3) of the men entered Mr. Middleton's house without permission and demanded payment for the dancers. Before Mr. Middleton had an opportunity to comply, the men began

2

firing at Mr. Middleton, Mr. Lyerly, and Mr. Davis. Mr. Lyerly and Mr. Davis died instantly. Mr. Middleton sustained critical injuries from the gunshots.

ECF No. 24-2 at 93 -94 (footnote omitted).

## B. State Court Procedural History

The Superior Court also summarized the procedural history of the case.

>   The Commonwealth charged [Cunningham] with two (2) counts of criminal homicide, criminal attempt, burglary, aggravated assault, carrying a firearm without a license, and criminal conspiracy. On June 18, 2007, [Cunningham] proceeded to a bench trial. The court tried [Cunningham] and his co-defendants jointly.
>   At trial, the Commonwealth presented testimony from Ms. McCorkle, Ms. Burrell, and Ms. Potter. Ms. McCorkle testified that she saw four (4) men exit a van and walk towards Mr. Middleton's house carrying guns. She identified Mr. Brown, Mr. Coto, and Mr. Surratt, but did not recognize the fourth gunman. Ms. Burrell, however, positively identified [Cunningham] as the fourth man, who entered the house wearing a ski mask and carrying a gun. Ms. Potter also testified she heard Ms. Burrell direct [Cunningham] to Mr. Lyerly's location inside the house. Further, a latent fingerprint examiner conclusively established the fingerprints lifted from the front storm door at Mr. Middleton's residence matched [Cunningham's] fingerprints.
>   Following numerous continuances, the court scheduled closing arguments for February 8, 2008. After the defense rested its case, however, [Cunningham's] counsel became seriously ill and died. Consequently, the court appointed replacement counsel to represent [Cunningham]. On February 8, 2008, replacement counsel appeared before the court and explained that he was unprepared to proceed. As a result, the court rescheduled [Cunningham's] closing argument for July 7, 2008, giving replacement counsel five (5) months to consult with [Cunningham], review the file, and prepare to close for the defense.
>   On July 7, 2008, replacement counsel delivered closing argument. Subsequently, the court found [Cunningham] guilty of two (2) counts of second degree murder and one (1) count each of burglary and criminal conspiracy. On September 22, 2008, the court sentenced [Cunningham] to concurrent terms of life imprisonment for his second degree murder convictions. The court also imposed concurrent terms of thirty (30) to sixty (60) months' imprisonment for his burglary conviction and eighteen (18) to thirty-six (36) months' imprisonment for his conspiracy conviction. On October 2, 2008, [Cunningham] timely filed a post-sentence motion, which the court denied on December 9, 2008. [Cunningham] did not pursue a direct appeal with [the Superior Court].
>   On April 6, 2009, [Cunningham] timely filed a pro se petition pursuant to [the PCRA]. Thereafter, the PCRA court appointed counsel. On July 8, 2009, counsel filed an amended PCRA petition, requesting reinstatement of

> [Cunningham's] appellate rights *nunc pro tunc.* On August 20, 2009, the PCRA
> court granted the requested relief.
>> On September 18, 2009 [Cunningham] timely filed his notice of appeal.

ECF No. 24-2 at 94 – 96.

Before the Superior Court, Petitioner raised three issues for review – two related to the

weight of the evidence and the third related to the trial judge not declaring a mistrial after the

death of Petitioner's trial counsel. Id. at 97.  In considering the direct appeal, a three judge panel

of the Superior Court denied Petitioner's weight of the evidence claim.  A majority of the panel

saw no reason to disturb the trial court's decision that there was no manifest necessity to declare

a mistrial.  However, Judge Freedberg filed a dissenting memorandum, in which he found that

Petitioner's constitutional rights were violated by the appointment of the new counsel for

purposes of closing arguments. Id. at 107 – 110. The panel also affirmed Cunningham's

judgment of sentence in part, but vacated the thirty to sixty-month sentence for burglary. The

panel held that the sentencing court erred in imposing a separate sentence for burglary because

that conviction was the predicate felony for the felony murder conviction.  Id. at 106.

Cunningham filed a Petition for Allowance of Appeal with the Pennsylvania Supreme

Court, but the petition was denied on March 30, 2011.  Commonwealth v. Cunningham, 20 A.3d

484 (Pa. 2011).

Petitioner also filed a petition for relief pursuant to the Post Conviction Relief Act

("PCRA"), 42 Pa. C.S.A. §§ 9541-46.  The Superior Court, in ruling on the PCRA petition,

summarized the procedural history of the PCRA phase of Petitioner's appeal.

> On December 27, 2011, Cunningham timely filed a *pro se* PCRA petition.
> Counsel was appointed, and she filed an amended PCRA petition on June 11,
> 2012. On August 21, 2012, Cunningham filed a *pro se* motion seeking to
> terminate PCRA counsel's representation. On August 29, 2012, Cunningham filed
> a *pro se* motion to amend the PCRA petition to add new claims. On September
> 24, 2012, PCRA counsel filed a motion for a *Grazier* hearing to determine

whether Cunningham knowingly and voluntarily wished to proceed *pro se.* On October 12, 2012, PCRA counsel filed a supplement to the amended PCRA petition, raising three additional claims that Cunningham included in his motion to amend.

On April 25, 2013, the PCRA court held a hearing on the PCRA petition. The PCRA court first asked Cunningham whether he still wished to represent himself and he declined. Notes of Testimony ("N.T."), 4/25/2013, at 2–3. Counsel then presented argument. No testimony was taken. Following the hearing, on May 20, 2013, the PCRA court granted Cunningham's motion to appoint a fingerprint expert. On November 6, 2013, PCRA counsel filed a "Notice of Status of Defense Expert's Review of Print Evidence." In that filing, PCRA counsel averred that the copy of the evidence had been provided to the defense expert and that "[n]o further argument or supplemental matter [would] be submitted by the defense regarding the print evidence." Notice of Status of Defense Expert's Review of Print Evidence, 11/6/2013, at 1.

On November 7, 2013, the PCRA court denied Cunningham's petition. On November 15, 2013, Cunningham filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). On December 17, 2013, the trial court filed its Pa. R.A.P. 1925(a) opinion. On January 30, 2014, PCRA counsel filed a petition to withdraw as counsel.

In the *Turner/Finley* brief, counsel identifies four potential issues:

1. Whether [trial counsel] was ineffective for failing to file a motion to sever, for purposes of trial, [Cunningham's] case from Co–Defendant Surratt's case?

2. Whether [trial counsel] was ineffective by failing to present an expert to challenge the reliability of the fingerprint/hand-print evidence?

3. Whether [Cunningham's] mandatory sentences of life in prison without parole, which prohibits the court from considering mitigating factors, is unconstitutional under Article I, Section 13 of the Pennsylvania Constitution, the Eighth and Fourteenth Amendments to the United States Constitution, Article 5 of the Universal Declaration of Human Rights and/or Article 7 of the International Covenent [sic]on Civil and Political Rights and whether failure to apply the decision of *Miller v. Alabama,* —— U.S. ——, 132 S.Ct. 2455 (2012) to the instant matter constitutes a violation of the equal protection clauses of the United Stated and Pennsylvania Constitutions?

4. Whether [Cunningham's] convictions and sentences are illegal and must be vacated and [Cunningham] discharged where the statutes defining the offenses and authorizing sentence are void

for failure to contain the enacting clause set forth and mandated
by/under 1 Pa.C.S. § 1101(a)?

*Turner/Finley* Brief at 3.

ECF No. 24-7 at 38 - 42.

Following review of the record and alleged issues, the Superior Court found no issues of

merit and affirmed the denial of PCRA relief.  Id. at 49.  Petitioner then filed a pro se Petition for

Allowance of Appeal to the Pennsylvania Supreme Court.  Id. at 54 – 69.  It was denied by the

Supreme Court on February 11, 2015. Id.  at 80.

### C.  Federal Court Procedural History

In August 2015, Petitioner initiated the instant habeas proceedings by sending a pro se

Section 2254 Habeas Petition on the form petition utilized in this District unaccompanied by

either the filing fee or a Motion for Leave to Proceed in Forma Pauperis ("IFP Motion"). ECF

No. 1.  After Petitioner filed the complete IFP Motion, it was granted and the Petition was then

filed.  ECF No.  6.

Subsequently, Petitioner acquired privately retained counsel, who filed a Motion to

Amend/Correct the Petition, ECF No. 17, which was granted.  ECF No. 18.  After requesting an

extension of time to file the Amended Petition, ECF No. 19, the Court granted the extension of

time.  ECF No. 20.   On May 10, 2016, Petitioner's counsel filed the Amended Petition.  ECF

No. 21.  The Amended Petition set forth only one Ground for Relief:

> I.  PETITIONER WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE
> OF COUNSEL AND DUE PROCESS PURSUANT TO THE SIXTH AND
> FOURTEENTH AMENDMENTS OF THE UNITED STATES
> CONSTITUTION WHEN THE TRIAL COURT ORDERED THE TRIAL
> ATTORNEY TO BE REPLACED BY A NEW SUBSTITUTE ATTORNEY
> BEFORE THE TRIAL HAD CONCLUDED.

ECF No. 21 at 9.  Respondents filed an Answer, denying that Petitioner was entitled to any

relief.  ECF No. 24.  Respondents also caused the original state court trial record to be delivered

to the Clerk of Court.  Petitioner's counsel filed a traverse.  ECF No. 25.

All parties have consented to have the United States Magistrate Judge exercise plenary

jurisdiction.  ECF Nos. 9 and 15.

## II.  APPLICATION OF THE AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") which

amended the standards for reviewing state court judgments in federal habeas petitions filed under

28 U.S.C. § 2254 was enacted on April 24, 1996.  Because Petitioner's habeas Petition was filed

after its effective date, the AEDPA is applicable to this case.  Werts v. Vaughn, 228 F.3d 178,

195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of

the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA

provides the applicable deferential standards by which the federal habeas court is to review the

state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded

upon the standard found in 28 U.S.C. § 2254(d).  In Williams, the Supreme Court explained that

Congress intended that habeas relief for errors of law may only be granted in two situations: 1)

where the state court decision was "contrary to . . . clearly established Federal law as determined

by the Supreme Court of the United States" or 2) where that state court decision "involved an

unreasonable application of  … clearly established Federal law as determined by the Supreme

Court of the United States." Id. at 404-05 (emphasis deleted).  A state court decision can be

contrary to clearly established federal law in one of two ways.  First, the state courts could apply

a wrong rule of law that is different from the rule of law required by the United States Supreme

Court. Secondly, the state courts can apply the correct rule of law but reach an outcome that is

different from a case decided by the United States Supreme Court where the facts are

indistinguishable between the state court case and the United States Supreme Court case.

The United States Supreme Court has made extremely clear the AEDPA is a very

difficult standard to meet. Specifically, the Court has explained the AEDPA as follows:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See *Lockyer, supra,* at 75, 123 S.Ct. 1166.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. Cf. *Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 562 U.S. 86, 102–03 (2011).

The AEDPA also provides another ground for claiming relief, namely, where the state

court's adjudication of the claim "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d)(2).

**III. DISCUSSION**

In the Amended Petition, Petitioner raises the following issue for this Court to review:

> I. PETITIONER WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT ORDERED THE TRIAL ATTORNEY TO BE REPLACED BY A NEW SUBSTITUTE ATTORNEY BEFORE THE TRIAL HAD CONCLUDED.

ECF No. 21 at 9. We understand this assertion to contain at least two distinct constitutional claims.

**A. Fourteenth Amendment - Fundamental Fairness Claim**

Petitioner claims that his constitutional right to a fair trial guaranteed by the Fourteenth Amendment to the United States Constitution was violated by the trial court's appointment of new counsel after the close of all the evidence, in order for newly appointed counsel to give the closing arguments. Petitioner primarily relies on the contention that the newly appointed counsel could not possibly have appreciated or adequately argued the credibility of witnesses against Petitioner because he did not observe the witnesses.[1]

Petitioner argues that the trial court abused its discretion in failing to *sua sponte* declare a mistrial after Petitioner's trial counsel died and, instead, appointing replacement counsel. Petitioner contends that this course of action denied him fundamental fairness because replacement counsel could not possibly present a closing argument effectively, given that he did not personally observe the witnesses, and therefore could not argue demeanor evidence.

Specifically, Petitioner argues, in the Brief in Support portion of the Amended Petition, that:

---

[1] We will refer to such putative credibility evidence of observing the witness testifying on the stand as "demeanor evidence."

> While he [Replacement Attorney Sheets] attempted to portray Geneva Burrell and other witnesses as being incredible witnesses and giving incredible testimony, he never saw or heard her or any witness testify and, in fact he, like an appellate court (and this Honorable Court) reviewing a cold record, could not have made any credibility determinations regarding witnesses since he was never in a position to do so, and was unable to discuss the demeanor of Burrell and other Commonwealth witnesses or defense witnesses and so could not make any closing argument regarding how Burrell's demeanor, or that of other Commonwealth witnesses or defense witnesses, affected their credibility or the import that should be attributed to their testimony. Moreover, he could not effectively argue regarding the credibility or demeanor of numerous witnesses who never saw Petitioner at the scene of the shooting. Hence, Replacement Attorney Sheets, no matter how diligent, could not have obtained the flavor of the trial or the demeanor, personality or credibility of the witnesses from merely reading a cold transcript, and therefore was patently unqualified to deliver a closing argument, which is a critical stage of any trial, since personal knowledge of those factors were essential in making arguments to the trial court regarding the credibility to be ascribed to the Commonwealth and defense witnesses.

ECF No. 21 at 28 - 29.

### 1. Petitioner fails to carry his burden under the AEDPA.

First and foremost, Petitioner fails to point to any United States Supreme Court precedent regarding substantive due process that requires a contrary outcome in this case. Nor has Petitioner pointed to any United States Supreme Court precedent on substantive due process which establishes that the State Courts unreasonably applied such precedent.

### 2. Even providing *de novo* review of this claim, it is meritless.

A claim that one was denied substantive "due process" is a claim that one was denied "fundamental fairness." See Riggins v. Nevada, 504 U.S. 127, 149 (1992)("We have said that 'the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial,' *Spencer v. Texas*, 385 U.S. 554, 563-564 (1967)[.]"); Lisenba v. California, 314 U.S. 219, 236 (1941) ("The aim of the requirement of due process is . . . to prevent fundamental unfairness"); Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) ("In order to prevail on a claim that an . . . error deprived the defendant of due process under the Fourteenth Amendment he must show that the

error was so pervasive as to have denied him a fundamentally fair trial").  Because the

guideposts for decision-making under the rubric of due process are lacking, the United States

Supreme Court has cautioned that:

> In the field of criminal law, we "have defined the category of infractions that
> violate 'fundamental fairness' very narrowly" based on the recognition that,
> "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due
> Process Clause has limited operation." *Dowling v. United States*, 493 U.S. 342,
> 352 (1990). The Bill of Rights speaks in explicit terms to many aspects of
> criminal procedure, and the expansion of those constitutional guarantees under the
> open-ended rubric of the Due Process Clause invites undue interference with both
> considered legislative judgments and the careful balance that the Constitution
> strikes between liberty and order.

Medina v. California, 505 U.S. 437, 443 (1992) (some citations omitted).

To establish a substantive due process claim, a petitioner must show both that there was

some fundamental error and a reasonable likelihood of prejudice resulting therefrom.  See Fadiga

v. Atty. Gen. U.S.A., 488 F.3d 142, 158 (3d Cir. 2007) ("A showing of fundamental unfairness

in the context faced by the Charleswell court required 'both that some fundamental error

occurred and that as a result of that fundamental error [the alien] suffered prejudice.'") (quoting

United States v. Charleswell, 456 F.3d 347, 358 (3d Cir. 2006)).  Moreover, prejudice in the

substantive due process criminal trial context means the "trial is fundamentally unfair if there is a

reasonable probability that the verdict might have been different had the trial been properly

conducted."  Foy v. Donnelly, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks

omitted).

### a. No fundamental error occurred.

Petitioner has essentially pointed to nothing in support of a substantive due process claim

(as opposed to a Sixth Amendment claim) other than Judge Freedberg's dissenting opinion,

supporting remand for a new trial that accompanied the Superior Court denial of the direct

appeal. Petitioner fails to show that appointment of replacement counsel constituted any error, yet alone, a fundamental error.

In fact, we find that there is no substantive due process prohibition on the trial court appointing new counsel after the close of all evidence in order for new counsel to present closing arguments and this is true even if newly appointed counsel was not in a position to evaluate demeanor evidence of credibility.

We are not persuaded that Attorney Sheets' (i.e., the replacement counsel appointed by Judge Nauhaus) inability to evaluate demeanor evidence rendered the trial fundamentally unfair. The Court notes that Judge Nauhaus, the trial judge, granted Attorney Sheets a five-month extension of time to consult with Petitioner, review the file and prepare to make a closing argument. Further, the Court notes that Judge Nauhaus was the finder of fact who heard all of the testimony and observed all of the witnesses. The closing argument presented by counsel is not evidence but merely a summary of the evidence presented. Hence, Petitioner has not even established that there was any constitutional error on the part of the trial court in proceeding the way it did, namely, to appoint new counsel for purposes of closing arguments.

**b**. **No prejudice occurred.**

However, even if Petitioner could establish error, he fails to establish that such error prejudiced him. "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." Foy, 959 F.2d at 1317 (internal quotation marks omitted).

Petitioner cannot show prejudice stemming from the appointment of new counsel. This is so because this Court has carefully read and reviewed the closing arguments of all the counsel for all four of the defendants in this non-jury trial. All three of the counsel for the three other

defendants were present at the trial and observed demeanor evidence of credibility and not one of

those three lawyers for the other three defendants argued demeanor evidence of credibility. We

note that they did strenuously argue that Ms. Burrell, (the sole witness who placed Petitioner at

the scene of the crime, and whose demeanor was not observed by replacement counsel) was

incredible and was shown to be a liar and should not be believed.  Notwithstanding the fact that

these three other counsel who observed the demeanor evidence of credibility and strenuously

argued that Ms. Burrell was incredible, all three of the defendants were found guilty of, *inter*

*alia*, second degree murder in the deaths of each of the two victims.  Similarly, Attorney Sheets

vigorously attacked Ms. Burrell's credibility, even though he did not and could not reference any

demeanor evidence of credibility in his closing arguments, but, as noted, neither did the other

three defense counsel reference any demeanor evidence of credibility. On the basis of the record

before this Court, Petitioner utterly fails to show any prejudice from the fact that Attorney Sheets

did not personally observe demeanor credibility of any of the witnesses.  There is no reasonable

probability that the verdict might have been different had the trial been "properly conducted."

Thus, for the reasons set forth herein, Petitioner has not met his burden to persuade this

Court that he is entitled to habeas relief based on the Fourteenth Amendment.

### B. Sixth Amendment Claims

#### 1. Procedural default

Petitioner actually seems to make two distinct Sixth Amendment claims.  One claim is

that Petitioner was denied the effective assistance of counsel because replacement counsel could

only read the cold transcript of the trial testimony and could not get the flavor of the live

testimony from the reading of a cold record and, therefore, could not accurately argue in the

closing arguments any evidence of lack of credibility based upon observations of the witnesses

against his client. See id. at 28 – 29.[2]  We deem this to be a classic ineffective assistance of

counsel claim pursuant to Strickland v. Washington.

The second Sixth Amendment claim that Petitioner makes is apparently a constructive

denial of counsel claim pursuant to United States v. Cronic, 466 U.S. 648 (1984).  See, e.g., ECF

No. 21 at 23 – 26 (quoting extensively from Cronic); ECF No. 25 at 4 ("Moreover, Petitioner

---

[2] Petitioner argues:

> This was a case that turned on witness credibility since Petitioner's alleged
> presence at the shooting turned upon the credibility of witnesses (the fingerprint
> [belonging to Petitioner] on the storm door could have been left there long prior to
> the day of the homicides). The Commonwealth's theory was that Petitioner was
> the only person who was wearing a mask.  As such, his identification by a single
> witness, Geneva Burrell, was grounds to be attacked by an attorney who actually
> observed that witness….
> At closing arguments on July 7, 2008, Replacement Attorney Sheets, who
> never observed one witness testify at trial, merely read the cold transcripts, which
> conveyed no demeanor, emotion, type of personality or indications of credibility
> of the witnesses who had testified, especially Commonwealth witnesses like
> Geneva Burrell, or witnesses who stated that they never saw Petitioner at the
> crime scene, and when presenting his closing argument Replacement Attorney
> Sheets merely referred to the cold record contained in the transcripts, and even
> cited to transcript pages. TT, 7/7/08, at 3-14. While he attempted to portray
> Geneva Burrell and other witnesses as being incredible witnesses and giving
> incredible testimony, he never saw or heard her or any witness testify and, in fact
> he, like an appellate court (and this Honorable Court) reviewing a cold record,
> could not have made any credibility determinations regarding witnesses since he
> was never in a position to do so, and was unable to discuss the demeanor of
> Burrell and other Commonwealth witnesses or defense witnesses and so could not
> make any closing argument regarding how Burrell's demeanor, or that of other
> Commonwealth witnesses or defense witnesses, affected their credibility or the
> import that should be attributed to their testimony. Moreover, he could not
> effectively argue regarding the credibility or demeanor of numerous witnesses
> who never saw Petitioner at the scene of the shooting. Hence, Replacement
> Attorney Sheets, no matter how diligent, could not have obtained the flavor of the
> trial or the demeanor, personality or credibility of the witnesses from merely
> reading a cold transcript, and therefore was patently unqualified to deliver a
> closing argument, which is a critical stage of any trial, since personal knowledge
> of those factors were essential in making arguments to the trial court regarding the
> credibility to be ascribed to the Commonwealth and defense witnesses.

ECF No. 21 at 28 – 29 (footnote omitted).

does not have to demonstrate prejudice when there is a structural defect because prejudice is presumed.") (citing <u>Cronic</u>).

There is a difference in the factual bases and the legal analyses between a claim of being denied counsel, either actually or constructively denied counsel, at a "critical stage" and a claim of ineffectiveness of counsel. <u>Cronic</u>, 466 U.S. at 648 (complete denial of counsel at a critical stage of proceedings does not require a showing of prejudice as is typical for a claim of ineffectiveness under <u>Strickland</u>); <u>Workman v. Wasden</u>, No. 1:08-CV-00052, 2011 WL 3925078, at *4 (D. Idaho, Sept. 7, 2011) ("Respondents argue that Petitioner exhausted this claim only to the extent that he relies on the standard of law from *Cronic* and not *Strickland*. The Court has reviewed the state court record and agrees. In the Idaho appellate courts, Petitioner claimed that prejudice should be presumed because his counsel abandoned him, and he did not attempt to argue that he was actually prejudiced by counsel's alleged errors.") (citations omitted). In contrast, to succeed on a <u>Strickland</u> ineffective assistance of counsel claim, the criminal defendant bears the burden of showing deficient performance by counsel and prejudice resulting from the deficient performance.

Whether Petitioner is making a Sixth Amendment <u>Cronic</u> denial-of-counsel claim or a Sixth Amendment <u>Strickland</u> ineffective assistance of counsel claim is ultimately irrelevant because Petitioner clearly failed to raise a Sixth Amendment claim in the state trial court and on appeal in his first appellate brief filed in the Superior Court (as opposed to the Petition for Rehearing en banc). <u>See</u> ECF No. 24-1 ¶¶ 7 - 8 ("7. Mr. Cunningham was denied his right to fair trial when the Trial Court did not declare a mistrial, based upon manifest necessity, upon the death of Attorney Reilly. 8. The Trial Court's failure to declare a mistrial violated Mr. Cunningham's due-process rights under the United States Constitution and Pennsylvania

Constitution."); Appellant's Brief on direct appeal, ECF No. 24-2 at 6 ("WERE APPELLANT'S

DUE PROCESS RIGHTS UNDER THE PENNSYLVANIA AND FEDERAL

CONSTITUTIONS VIOLATED WHEN THE TRIAL COURT ERRED IN FAILING TO SUA

SPONTE DECLARE A MISTRIAL AFTER THE DEATH, DURING TRIAL, OF

APPELLANT'S TRIAL COUNSEL, FRANK REILLY?").

The first time that Petitioner raised a Sixth Amendment claim was in his Petition for

Reargument en banc before the Superior Court on the direct appeal but only after Judge

Freedberg, a retired Senior Judge assigned to the Superior Court, filed his dissenting

memorandum in which Judge Freedberg *sua sponte* raised the claim that Petitioner was denied

the effective assistance of counsel. ECF No. 24-3 at 48 – 54 (raising ineffective assistance of

counsel claim and quoting extensively from Judge Freedberg's dissenting memorandum).

Because the Sixth Amendment claim or claims were raised for the first time in the Petition for

Reargument en banc, we find any such Sixth Amendment claims to be procedurally defaulted.

Moranko v. Downs Racing LP, 118 A.3d 1111 (Pa. Super. 2015) (administratrix of driver's estate

waived for appeal her argument that Restatement provisions established a duty, where

administratrix did not raise provisions as a basis for relief in the trial court at any point in the

proceedings, including in her opposition to summary judgment, and, with regard to one

provision, raised argument for the first time in her supplemental brief submitted on reargument

in Superior Court). See also Pa. R.A.P. 302(a) ("General rule. Issues not raised in the lower

court are waived and cannot be raised for the first time on appeal.").

Accordingly, we find any Sixth Amendment issues waived under state law and

procedurally defaulted for purposes of federal habeas relief.

16

**2. Lack of merit**

In the alternative, we find the Sixth Amendment claims to be meritless. A true <u>Cronic</u> denial-of-counsel claim cannot be made out on this record. Even a cursory review of the closing arguments by Attorney Sheets rebuts any argument that Petitioner was constructively denied counsel in any way. Attorney Sheets subjected the Commonwealth's case to searching adversarial testing in the closing argument. <u>See</u>, <u>e.g.</u>, <u>Cronic</u>, 466 U.S. at 656–57 ("Thus, the adversarial process protected by the Sixth Amendment requires that the accused have 'counsel acting in the role of an advocate.' *Anders v. California*, 386 U.S. 738, 743, 87 S.Ct. 1396, 1399, 18 L.Ed.2d 493 (1967). The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.") (footnotes omitted).

Insofar as Petitioner attempts to mount a <u>Strickland</u> ineffective assistance of counsel claim, Petitioner failed to carry his burden to show ineffectiveness. As to the performance prong, Petitioner fails to show that Attorney Sheets' performance was deficient in any way. We reject the claim that merely because Attorney Sheets was not able to personally argue any demeanor evidence of credibility in his closing argument, that his performance in the closing argument was necessarily deficient.

Even if however, Petitioner could establish deficient performance, Petitioner cannot show prejudice under <u>Strickland</u>, as our discussion above concerning Petitioner's failure to establish prejudice under the substantive due process analysis shows. <u>Bearden v. Cockrell</u>, 3:01-CV-

17

0332-P, 2002 WL 870087, at *10 (N.D. Tex. Apr. 30, 2002) ("Courts analyzing the prejudicial

effect of a consolidated trial under *Strickland* use the same factors when they determine whether

a consolidated trial violated the due process rights of the defendant. *See Burnett*, 982 F.2d at 929

(analyzing the prejudice prong of *Strickland* and citing with approval *Manning*, 786 F.2d at 711-

12, a case that dealt with a due process violation)); Fantauzzi v. Britton, CIV.A. 10-2701, 2011

WL 6019333, at *17 (E.D. Pa. May 10, 2011) ("Furthermore, we have already determined that

the comments by the prosecutor, even if objectionable, did not violate due process by depriving

Petitioner of a fair trial. As this analysis parallels the prejudice analysis under *Strickland*,

*compare Strickland*, 466 U.S. at 687 (prejudice in the context of an ineffectiveness claim

requires that counsel's errors be 'so serious as to deprive the defendant of a fair trial.') *cf. Greer*

*v. Miller* 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) ('To constitute a due process

violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of

the defendant's right to a fair trial.'), we conclude that Petitioner has failed to show prejudice.

This claim of ineffective assistance is without merit."), *report and recommendation adopted*,

2011 WL 6019328 (E.D. Pa. Dec. 5, 2011).

Accordingly, the Sixth Amendment claims are either procedurally defaulted or meritless.


## IV.  CERTIFICATE OF APPEALABILITY

Because we conclude that jurists of reason would not find the foregoing debatable, a

Certificate of Appealability is denied.

## V. CONCLUSION

For the reasons set forth herein, the Petition is dismissed and a Certificate of

Appealability is denied.

BY THE COURT:

Date:  December 14, 2017                    s/Maureen P. Kelly
                                           MAUREEN P. KELLY
                                           CHIEF UNITED STATES MAGISTRATE JUDGE


cc:   All Counsel of record via CM-ECF